UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jeremy B.,

     Plaintiff,

     v.                             Civil Action No. 2:18-cv-159-jmc

Commissioner of Social Security,

     Defendant.

## OPINION AND ORDER
(Docs. 8, 9)

Plaintiff Jeremy B. brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the third decision of the

Commissioner of Social Security denying his application for disability insurance

benefits (DIB).  Pending before the Court are Plaintiff's motion to reverse the

Commissioner's decision (Doc. 8), and the Commissioner's motion to affirm the same

(Doc. 9).  For the reasons stated below, the Court GRANTS Plaintiff's motion,

DENIES the Commissioner's motion, and REMANDS for a calculation of benefits

and application of the rules for trial work and reentitlement periods.

## Background

### I.    Relevant Facts/Medical Records

Plaintiff was 31 years old on his alleged disability onset date of June 13,

2009.  He attended Castleton State College and has a master's degree from Antioch

University in clinical mental health counseling.  Plaintiff has work experience as a

behavior interventionist at a residential facility for teenagers with maladaptive sexual issues, a case manager for families with a child receiving mental health services, a community therapist for boys with mental health problems, a mental health home school coordinator, a sales supervisor at Home Depot, a technician at IBM, a security manager at the Trapp Family Lodge, and a sergeant in the U.S. military. He is married and has three children.

In the summer of 2003, Plaintiff injured his lower back while training with the Vermont National Guard. (AR 432, 440.) For the next few years, he experienced episodic flares of back pain; and in January 2006, he underwent a discectomy and fusion surgery.[1] (AR 460–66, 473.) Initially, Plaintiff's back improved after the surgery, but in October 2007, he reported moderate functional limitations due to back pain and resultant depression. (AR 524.) His functional limitations included severe limitations in trunk flexibility, moderate limitations in hamstring flexibility, and severe deficiencies in trunk strength in the lower abdominals and back extensors. (AR 524–26.) Although Plaintiff continued to work full time and live a fairly active life around that time period, he suffered from chronic back pain.

In December 2007, Plaintiff began treating with primary care physician, Dr. Gregory Froehlich, at the White River Junction Veterans Affairs Medical

---

[1] A discectomy is the surgical excision (cutting out) of all or part of an intervertebral disk (a disk of cartilage between two adjacent vertebrae). D, J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine* (Matthew Bender 2018). To prevent the vertebrae from collapsing and rubbing together, fusion surgery—which involves the insertion of a spacer bone graft to fill the open disc space and to create a spinal fusion between the two vertebrae—is often performed along with a cervical discectomy. Mayfield Clinic, *Anterior Cervical Discectomy & Fusion*, https://mayfieldclinic.com/pe-acdf.htm (updated Nov. 2018).

Center.  On August 20, 2008, Plaintiff underwent a disability examination with the Department of Veterans Affairs (VA)[2], reporting constant, chronic pain at a level of seven out of ten in the lumbosacral spine that radiated into the left leg and occasionally into the right.  (AR 631.)  On October 8, 2008, the VA notified Plaintiff that his "overall or combined [disability] rating" was 90%.  (AR 581; *see* AR 70.) Plaintiff chose not to seek unemployability through the VA, however, preferring instead to have the VA pay for retraining so he could try to return to work on a part-time basis in a job that would pay enough to support his family.  (AR 70.)

In June 2009, Plaintiff's part-time job at a mental health center ended, and he did not seek other work due to the increasing chronic pain in his back and legs, including spasms in his back and a feeling of fire, ice, and needles in his legs. (AR 58–59, 64–65.)  Thereafter, and for much of the relevant period, Plaintiff attended classes one day a week in pursuit of a graduate degree in clinical mental health counseling, with his goal being to help veterans with posttraumatic stress syndrome (PTSD) and substance abuse.  (AR 33, 58.)  He also cared for his three young children while his wife worked; and he prepared meals, did stretches to help his back, went on walks when he could, and played video games for short periods. (AR 59–61.)  To reduce his back pain, Plaintiff lay down for a long period each day while his children napped and also sporadically throughout the day, to total about three hours a day.  (AR 63.)  He also took morphine to alleviate his pain, which left him feeling sluggish.  (AR 69.)

---

[2] Plaintiff was a member of the U.S. Army for about 13 years, from approximately 1995 to 2008, until he was honorably discharged for medical reasons.  (AR 1058–59.)

In December 2009, Dr. Richard Morrison of the Vermont Disability Determination Services examined Plaintiff, and determined that Plaintiff was "at a disadvantage because of [his] back and . . . lower extremities," which "would impede his employment in most occupations." (AR 615.) Approximately eight months later, in August 2010, Dr. Froehlich completed a Residual Functional Capacity Questionnaire (Physical) for Plaintiff. (AR 877–81.) Dr. Froehlich reported that he had been treating Plaintiff since January 2008, and he had seen him every four to six months since then. (AR 877.) He stated that Plaintiff had chronic back pain including neuropathic pain radiating down both legs, and opined that "further improvement in functional status [wa]s unlikely," as Plaintiff had "reached maximum recovery." (*Id.*) Noting that he had not completed a functional assessment and that his responses were thus estimates, Dr. Froehlich checked boxes indicating that Plaintiff could sit for 30 minutes at one time, stand for 15 minutes at one time, sit for about two hours total in an eight-hour workday, and stand/walk for about two hours total in an eight-hour workday with normal breaks. (AR 879.) Dr. Froehlich also checked boxes indicating that Plaintiff could occasionally lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds; could rarely twist, stoop, or crouch/squat; and could occasionally climb ladders, climb stairs, and balance. (AR 880.) Dr. Froehlich indicated that Plaintiff could use his upper extremities to reach occasionally; and could handle, finger, and feel frequently. (*Id.*) Noting that Plaintiff was working one day/week at the time, Dr. Froehlich opined that, if Plaintiff were to work a five-day week, he would miss

work "frequently," meaning he would miss more than four days of work each month. (AR 881.)

About a year later, in July 2011, Dr. Froehlich reported that Plaintiff's functional capacity had not changed since his initial assessment, and that Plaintiff continued to have back pain that was "generally stable" but with "occasional exacerbations with excessive lifting." (AR 933.) Dr. Froehlich opined that Plaintiff could perform a moderately stressful job but not a highly stressful job because of his history of depression and the potential for stress to exacerbate his chronic pain. (*Id.*)

In January 2012, while Plaintiff was attending classes towards his masters degree including a one-day per week internship, he considered discontinuing the use of narcotic medication because he did not like the idea of taking narcotics while working in substance abuse counseling, and because he felt ill if he was unable to refill his prescriptions in a timely manner. (AR 989.) After examining Plaintiff, however, Dr. Froehlich recommend that he continue with his current regimen, as he had "benefitted markedly" from it, allowing him to "improve[] [his] functional status in multiple domains." (AR 990.) In August 2012, Plaintiff reported to Dr. Froehlich that he was working part time three or four days per week at a subclinical level, and he had extended the number of days he attended classes at school. (AR 967.) His pain was adequately controlled, but he still wanted to get off the morphine. (*Id.*)

In May 2013, Plaintiff graduated from his master's program. (AR 33, 1743.) In the same month, he testified at a hearing on this claim that he would soon start working as a mental health clinician at Central Vermont Substance Abuse Services (CVSAS) for 24 hours per week, and that CVSAS was "mak[ing] quite a few accommodations for [him]" so that he could perform the job despite his limitations. (AR 33.) Also in May 2013, Dr. Froehlich recorded in a Medical Update form that Plaintiff's functional capacity had not changed since he gave his opinions in August 2010 and July 2011, and that Plaintiff had exacerbations of pain when he lifted while twisting or lifted more than 25 pounds. (AR 1015.)

## II. Procedural History

Plaintiff filed his DIB application approximately ten years ago, in August 2009, alleging that he has been unable to work since June 13, 2009 due to lower back pain and depression. (AR 245.) Plaintiff stated that, since his January 2006 back surgery, he has been unable to complete his daily activities without pain, and he has been in pain "everyday and every minute," which has caused him to be depressed. (*Id.*) He explained that he has pain while sitting, lifting, and carrying things; he cannot sit or stand for long periods due to pain; and he is "very tired" from both the pain itself and the medication he takes to treat the pain. (*Id.*)

Plaintiff's application was denied initially and upon reconsideration, and he timely requested an administrative hearing. On July 22, 2011, Administrative Law Judge (ALJ) Thomas Merrill conducted the first hearing on the claim (AR 52–80), resulting in a denial on August 10, 2011 (AR 90–96). Plaintiff appealed, and on

September 14, 2012, the Appeals Council remanded the claim with instructions. (AR 103–04.)  On May 6, 2013, ALJ Merrill conducted a second administrative hearing (AR 28–51), and issued a second decision denying the claim approximately three weeks later (AR 10–21).  Plaintiff again requested reconsideration to the Appeals Council; and on January 12, 2015, the Appeals Council denied the request, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–5.)

Having exhausted his administrative remedies, Plaintiff filed his first civil action on his DIB claim in this Court in March 2015.  (AR 1110.)  On May 10, 2017, United States District Judge William K. Sessions III issued a 31-page "Memorandum Opinion and Order" vacating the decision of ALJ Merrill and remanding the claim back to the Commissioner with instructions.  (AR 1106–36.) Of particular relevance here, the Court's Order states: "Dr. Froehlich's opinions are consistent [with the record,] and . . . the ALJ should have followed the treating physician rule and given controlling weight to [them]."  (AR 1132.)  A few pages later, the Order reiterates: "[T]his court has found that the ALJ should have given controlling weight to Dr. Froehlich's opinion[s]."  (AR 1136.)  The Appeals Council then remanded the claim to an ALJ "for further proceedings consistent with the order of the court."  (AR 1139.)

On June 12, 2018, a new ALJ, Joshua Menard, held the third administrative hearing on Plaintiff's claim.  (AR 1043–1136.)  Plaintiff appeared, represented by counsel, and a vocational expert (VE) testified.  In addition, a non-examining medical expert, Dr. John Kwock, testified at the hearing, opining that, based on his

review of the record, Plaintiff could perform work at "a light work exertional level."

(AR 1053.)  On cross examination, Dr. Kwock acknowledged Plaintiff's pain and

stated that pain as a symptom "var[ies] markedly with individuals." (AR 1055.)  A

few weeks later, on July 5, 2018, ALJ Menard issued a decision—the third ALJ

decision in the case—denying Plaintiff's claim.  (AR 1019–29.)  Of note, the ALJ

opted not to follow this Court's instruction to give "controlling weight" to the

opinions of Dr. Froehlich.  (*See* AR 1019, 1025–28.)

Having once again exhausted his administrative remedies, on October 2,

2018, Plaintiff filed his second Complaint in this Court.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability

claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step

requires the ALJ to determine whether the claimant is presently engaging in

"substantial gainful activity" (SGA).  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the

claimant is not so engaged, step two requires the ALJ to determine whether the

claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the

ALJ finds that the claimant has a severe impairment, the third step requires the

ALJ to make a determination as to whether that impairment "meets or equals" an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").

20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his

or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728

F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's "residual functional capacity" (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, in his July 2018 decision, ALJ Menard first determined that Plaintiff has engaged in SGA since the alleged disability onset date of June 13, 2009. (AR 1022.) The ALJ specified that Plaintiff returned to work in June 2013 and "continues to engage in [SGA] through the date of this decision." (*Id.*) Nonetheless, the ALJ found that "there has been a continuous 12-month period(s) during which [Plaintiff] did not engage in [SGA]," namely from the alleged disability onset date of June 13, 2009 through May 31, 2013. (*Id.*) Therefore, the

ALJ moved to the second step, finding that Plaintiff has the severe impairment of degenerative disc disease status post lumbar surgery. (*Id.*) Conversely, the ALJ found that Plaintiff does not have a severe mental impairment. (AR 1023.) At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 1023–24.)

Next, the ALJ determined that Plaintiff has the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except as follows: "[Plaintiff] can frequently climb ladders, ropes, and scaffolds. He can occasionally stoop, frequently kneel, occasionally crouch, and never crawl. He can have frequent exposure to unprotected heights and moving mechanical parts." (AR 1024.) Given this RFC, the ALJ found that Plaintiff is capable of performing his past relevant work as a case worker and a counselor. (AR 1029.) The ALJ concluded that Plaintiff has not been under a disability from the alleged disability onset date of June 13, 2009 through the date of his July 5, 2018 decision. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

### I.     The ALJ failed to comply with the District Court's May 2017 Order.

As noted above, this Court remanded Plaintiff's claim to the Commissioner approximately two years ago, finding that ALJ Merrill erred in his analysis of the

opinions of treating physician Dr. Froehlich. (AR 1106–36.) In his May 10, 2017 Order, Judge Sessions wrote: "[T]his court determines that . . . *the ALJ should have followed the treating physician rule and given controlling weight to Dr. Froehlich's opinions*. The ALJ's rationale for not doing so is not supported by 'good reasons.'" (AR 1132 (emphasis added).) The Court explained that Dr. Froehlich's several opinions over the years are consistent with each other and with the opinions of examining consultant Dr. Morrison. (AR 1132–34.) Moreover, the Court disagreed with the ALJ's finding that Dr. Froehlich's opinions are inconsistent with Plaintiff's activities during the relevant period, explaining:

> attending school is not inconsistent with Dr. Froehlich's opinion[s] and is also not inconsistent with [Plaintiff] working part time, since he was only working between one and two days a week with a developmentally delayed teen, which employment did not require activities such as lifting, twisting, stooping, crouching, or reaching.

(AR 1133.) The Court further considered that Dr. Froehlich:

> started treating [Plaintiff] in December of 2007 and had been treating him for almost three years when he completed the [RFC] Questionnaire in August of 2010[; and] [b]etween December . . . 2007 and May 2013, [Plaintiff] met with Dr. Froehlich on numerous occasions, approximately every four to six months, and they also spoke by telephone.

(AR 1135.) The Court concluded that Dr. Froehlich's opinions are "supported by substantial evidence in the case record" (AR 1134), and that "*the ALJ should have given controlling weight to Dr. Froehlich's opinion[s]*, since [they were] well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in [the] case record" (AR 1136 (internal quotation marks omitted) (last alteration in original) (emphasis added)).

Remanding the claim to the Commissioner, the Court directed the ALJ to "afford more weight" to the opinions of Dr. Froehlich.  (*Id.*)

On remand, ALJ Menard explicitly rejected the Court's directive to give controlling weight to the opinions of Dr. Froehlich, instead finding that they are "entitled to no more than moderate weight."[3]  (AR 1019.)  The ALJ's failure to follow the Court's Order is reversible error under both the mandate rule and the law-of-the-case doctrine.  *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."); *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 145 (1940) ("On review the court may . . . correct errors of law[,] and on remand the [Federal Communications] Commission is bound to act upon the correction.").  The Second Circuit has explained that, "[u]nder the law-of-the-case doctrine, where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court."  *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)); *see Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (under the law-of-the-case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case").  The Circuit has further explained

---

[3] The ALJ also rejected the July 2017 Order of the Appeals Council, which directed the ALJ to conduct further proceedings "consistent with the order of the court," meaning the Court's May 2017 Order.  (AR 1139.)

that the "mandate rule prevents relitigation in the district court not only of matters expressly decided by the appellate court, but also precludes relitigation of issues impliedly resolved by the appellate court's mandate." *Sompo Japan Ins. Co.*, 762 F.3d at 175 (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012)); *see Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005) (the rule of mandate requires that "on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision").

The mandate rule and law-of-the-case doctrine apply in the context of social security appeals. As another district court in the Second Circuit recently stated: "[C]ourts in the Second Circuit have regularly acknowledged that remand instructions to an ALJ from a federal district court in Social Security cases constitute the law of the case[, and] [d]istrict courts have also applied the so-called 'rule of mandate' in the Social Security context." *Krawczyk v. Berryhill*, No. 1:17-CV-01311-MAT, 2019 WL 244491, at *4 (W.D.N.Y. Jan. 17, 2019) (citations omitted)); *see Frank K. v. Comm'r of Soc. Sec.*, 371 F. Supp. 3d 163, 170 (D. Vt. 2019) ("[C]ourts in the Second Circuit have recognized that the law-of-the-case doctrine applies to administrative agencies on remand and prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings." (internal quotation marks omitted)); *Ayer v. Comm'r of Soc. Sec.*, No. 5:15-CV-15, 2016 WL 11580280, at *5 (D. Vt. May 11, 2016) ("Regulations implementing the Social Security Act require application of an administrative version of the mandate rule."); *Nettleton v. Astrue*, No. 3:11 CV 1357 JBA, 2012 WL

7832625, at *2 (D. Conn. Feb. 27, 2012), *report and recommendation adopted in Nettelton v. Astrue*, 2013 WL 1390042 (Apr. 4, 2013) ("It is well[] settled that deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." (internal quotation marks and alterations omitted)); *Calderon v. Astrue*, 683 F. Supp. 2d 273, 276 (E.D.N.Y. 2010) (law-of-the-case doctrine and mandate rule apply with equal force to Social Security appeals); *Carrillo v. Heckler*, 599 F. Supp. 1164, 1168 (S.D.N.Y. 1984) ("On the remand of a case after appeal, it is the duty of the lower court or the agency from which the appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation." (internal quotation marks omitted)). The Eighth Circuit similarly held: "The 'law of the case' doctrine . . . applies to administrative agencies on remand[, and t]hus, if the District Court actually found that [the claimant] needed to lie down, the ALJ would be bound by that finding." *Brachtel v. Apfel*, 132 F.3d 417, 419–20 (8th Cir. 1997) (citations omitted). The Seventh Circuit agreed, stating: "The rule that an administrative agency is limited on remand by the instructions of the reviewing court is settled beyond question." *Butler Lime & Cement Co. v. Occupational Safety & Health Review Comm'n*, 658 F.2d 544, 549 (7th Cir. 1981); *see Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) ("The law of the case doctrine, which requires the trial court to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart, is applicable to judicial review of administrative decisions . . . [,] requir[ing] the administrative

agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." (internal quotation marks and citations omitted)).  Likewise, the Sixth Circuit explained that, where, as here, a district court remand order includes "detailed instructions concerning the scope of the remand and the issues to be addressed," "the [ALJ] may not do anything expressly or impliedly in contradiction to th[at] . . . order," and in fact, deviation from that order in subsequent administrative proceedings "is itself legal error, subject to reversal on further judicial review."  *Hollins v. Massanari*, 49 F. App'x 533, 536 (6th Cir. 2002).  The Northern District of Texas agreed, explaining:

> The mandate rule provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of the appellate court.  In Social Security proceedings, the district court's position to the Appeals Council (and indirectly, the ALJ) is analogous to that of the court of appeals' position with respect to a trial court.  The Commissioner is not entitled to endless opportunities to apply the proper legal standard correctly and gather evidence to support his conclusion.

*Hayes v. Comm'r of Soc. Sec. Admin.*, No. 3:11–CV–1998–L (BF), 2012 WL 4442412, at *16 (N.D. Tex. July 30, 2012), *report and recommendation adopted in Hayes v. Astrue*, 2012 WL 4442411 (Sept. 26, 2012) (internal quotation marks and citations omitted); *see Salvati v. Astrue*, No. 3:08-CV-494, 2010 WL 546490, at *6 (E.D. Tenn. Feb. 10, 2010) ("[A]n ALJ has no discretion when it comes to following a procedural instruction in a remand order; he simply must engage in the inquiry that is ordered, in the manner specified, and document his findings as required."); *Ischay*, 383 F.

Supp. 2d at 1217 ("ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court *are* the law of the case.").

Many district courts, including this one, have consistently applied the mandate rule and the law-of-the-case doctrine in the context of social security disability appeals, and have remanded to the Commissioner due to the ALJ's failure to follow an order of either the district court or the Appeals Council.[4] *See, e.g.*, *Stanzione v. Colvin*, No. 2:14-CV-224, 2016 WL 111430, at *4 (D. Vt. Jan. 11, 2016) ("[T]he ALJ's failure to follow the dictates of the Court's Remand Order . . . is reversible error."); *Freegard v. Comm'r of Soc. Sec.*, No. 1:14-CV-34, 2015 WL 471703, at *5 (D. Vt. Feb. 4, 2015) ("The ALJ's failure to follow the Court's Order . . . is, in and of itself, reversible error."); *Betourney-Pavao ex rel. Mandly v. Comm'r of Soc. Sec.*, No. 5:14-CV-00011, 2014 WL 6908123, at *6 (D. Vt. Dec. 8, 2014) ("The ALJ ignored the court's remand order, which is reversible error."); *Masters v. Comm'r of Soc. Sec.*, Case No. 3:17-cv-354, 2019 WL 1529198, at *5 (S.D. Ohio Apr. 9, 2019) (claim remanded where ALJ "blatant[ly] disregard[ed]" court order requiring ALJ to "specifically consider certain abnormal clinical findings"); *Ischay*, 383 F. Supp. 2d at 1223 ("the doctrine of the law of the case and the rule of mandate compel the conclusion that the ALJ abused his discretion to the extent that he took evidence on matters beyond the single issue identified in this Court's

---

[4] ALJs are required to follow the directives of the Appeals Council as well as the court. *See* 20 C.F.R. § 404.977(b) ("The [ALJ] shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."); *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371–72 (W.D.N.Y. 2009) ("[An] ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand." (alteration in original)).

[remand] [o]rder"); *Carrillo*, 599 F. Supp. at 1168–69 (ALJ erred in reconsidering severity of claimant's impairments, where district court order implicitly affirmed ALJ's finding of severity, thus establishing it as the law of the case to be followed in subsequent administrative proceedings).

Applying the mandate rule and the law-of-the-case doctrine to require ALJs to follow the directives of district court orders is not a novel or innovative concept. Decades ago, the Eastern District of Washington succinctly stated the obvious— ALJs may not "simply ignore[e] the mandate [of the court], nor . . . purport[] to 'overrule' [a] perceived error [in the court's order]," as ALJ Menard has done here.

*Holst v. Bowen*, 637 F. Supp. 145, 147 (E.D. Wash. 1986). The court explained:

> Historically, the system has operated in hierarchical fashion with decisional power vested, in ascending order, in an [ALJ], the Appeals Council, the district court, the court of appeals, and the Supreme Court. The Supreme Court overrules appellate court decisions, not the other way around. The court of appeals overrules decisions of the trial court, not the other way around. And the district court overrules the Appeals Council, not the other way around.
>
> The bottom line is that the ALJ and the [Commissioner] may well be right in their legal analysis. If so, that position will be vindicated upon further appeal. But they are dead wrong in the ill-conceived assumption of a power not properly theirs.

*Id.* at 147–48 (footnotes and citations omitted). As this Court has previously held, an ALJ's failure to follow the court's directives in a remand order "not only diminishes the effectiveness of the disability appeals system as a whole, it wastes the time of the Social Security Administration, the Court, and most importantly, the claimant," who in this case initially filed his application for disability benefits

approximately ten years ago. *Johnson v. Comm'r of Soc. Sec.*, No. 2:15-CV-106, 2016 WL 2853516, at *6 (D. Vt. May 16, 2016).

Aside from a few mentions of the Court's instruction to give controlling weight to Dr. Froehlich's opinions, the ALJ's decision analyzes the opinions of Dr. Froehlich *as if those opinions were being reviewed for the first time*, discussing whether the opinions are internally consistent, supported, and consistent with the record. (AR 1025–28.) Likewise, the structure and content of the Commissioner's motion largely reflects an aspiration that the Court will review this claim as if it were being reviewed on appeal for the first time. But Plaintiff's claim has already been reviewed by this Court, culminating in a thorough 31-page Order which makes explicit findings and gives specific direction to the Commissioner regarding how to handle the claim on remand. The undersigned is obliged to follow the language and spirit of that Order, and will not disregard it without good reason, which the Commissioner fails to proffer. The Commissioner fails to effectively address Plaintiff's argument that the ALJ was required to abide by the Court's directive to give controlling weight to Dr. Froelich's opinions, and cites no law to counter the cases cited in Plaintiff's motion on this point. (*See* Doc. 8 at 3–4.) Instead, the Commissioner, like the ALJ, largely analyzes these opinions as if they were being considered for the first time, concluding that the ALJ "reasonably gave moderate weight to Dr. Froelich's opinion[s]." (Doc. 9 at 11.) But it was not for the Commissioner to set aside the explicit direction of the Court and reanalyze these medical opinions. It is rare for a court to state in an order that the Commissioner

should have given "controlling weight" to a treating physician's opinions, but in the Order at issue here, the Court made that statement twice. (AR 1132, 1136.)

The Commissioner claims the ALJ had good reason to disregard the Court's instruction to give controlling weight to the opinions of Dr. Froehlich, noting the ALJ's statement in his decision that he declined to follow the Court's directive, "given [Plaintiff's] return to work and the updated medical evidence of record." (AR 1026.) This "updated medical evidence," however, primarily includes the testimony of a newly appointed medical expert, Dr. Kwock, who never examined or had a treating relationship with Plaintiff, and who the ALJ himself appointed over Plaintiff's objection (*see* AR 1051). According to the ALJ, Dr. Kwock's testimony was required, "given [Plaintiff's] return to work and the changed nature of the analysis." (AR 1019.) But the Court knew that Plaintiff was planning to return to work when it issued its Order in May 2017: Plaintiff had testified at the second administrative hearing (in May 2013) that he was starting a new job on the day after the hearing which would require him to work 24 hours per week. (AR 33–34.) Moreover, the Court stated as follows in its May 2017 Order: "In August of 2012, [Plaintiff] . . . reported that he was attending school full time and was working part[] time, 3–4 days per week." (AR 1119.) Dr. Froehlich was also aware of Plaintiff's part-time work during the alleged disability period, and his opinions regarding Plaintiff's limitations do not preclude that work either before or after Plaintiff earned his masters degree. By the time of the third administrative hearing, in June 2018, Plaintiff had settled into a schedule of working about 21–24

hours per week as a counselor at an intensive outpatient mental health treatment program (AR 1059, 1065, 1069–70), which is consistent with Dr. Froehlich's opinions about Plaintiff's limitations and ability to work part time. Although new evidence may furnish compelling grounds for an ALJ to depart from a court's remand order, if, as here, the evidence does not undermine the court's order, the order must stand. *Wilder*, 153 F.3d at 803 (citing *United States v. Rivera-Martinez*, 931 F.2d 148, 153 (1st Cir. 1991); *In re Japanese Elec. Prod. Antitrust Litig.*, 807 F.2d 44, 48 (3d Cir. 1986)); *see Morales v. Berryhill*, No. 17-CV-9315 (JLC), 2018 WL 6381049, at *22 (S.D.N.Y. Dec. 6, 2018).

The Commissioner somewhat absurdly argues that the Court Order does not *require* the ALJ to give controlling weight to Dr. Froehlich's opinions, stating that "the decision stopped short of requiring the ALJ to do so on remand." (Doc. 9 at 8.) The relevant language from the Order is quoted above and could not have been stated more directly; it is difficult to see how the ALJ could discern from a court order which states (twice) that "the ALJ should have given controlling weight to Dr. Froehlich's opinion[s]" (AR 1136), that the ALJ need not give controlling weight to those opinions. In support of this argument, the Commissioner focuses on the last sentence of the Court's Order, which states merely that the ALJ must "afford *more* weight to [the] treating physician's opinion[s]." (*Id.* (emphasis added).) But surely, ALJs are obligated to follow the directives contained anywhere in a court's remand order, whether they are contained on the first page, on the last page, or in the middle. In any event, although the ALJ states in his decision that he gives

Dr. Froehlich's opinions "moderate weight" (*i.e.*, more weight than the prior ALJ decision), the RFC determination is almost the same as that of the prior ALJ decision (*compare* AR 16 and AR 1024), with the exception of a few additional limitations provided by Dr. Kwock at the third administrative hearing (*see* AR 1053–54).

In sum, the ALJ should have followed the instructions contained in the Court's May 2017 Order to give controlling weight to the opinions of Dr. Froehlich. Had the ALJ done so, Plaintiff would have been found disabled starting on his alleged disability onset date of June 13, 2009, given Dr. Froehlich's opinion that Plaintiff would miss more than four days of work each month (AR 881) and the VE's testimony at the June 2018 administrative hearing that "[t]here would be no work" if an employee had an absentee rate of two or more days of work per month (AR 1075–76).

## II.    Remand solely for a calculation of benefits is appropriate.

When a determination of non-disability is not supported by substantial evidence, the court must decide whether to reverse and remand for rehearing or reverse and order benefits granted.  42 U.S.C. § 405(g) (court has authority to affirm, modify, or reverse Commissioner's decision "with or without remanding the cause for rehearing"); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).  Plaintiff argues that the Commissioner's most recent decision should be reversed and the matter remanded solely for calculation of benefits, given that there is no gap in the

evidentiary record and no reason to believe another hearing would produce better evidence to support the Commissioner's denial of disability. (Doc. 8 at 11.)

It is appropriate to remand solely for calculation of benefits where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision" and evidence of disability is overwhelming. *Butts*, 388 F.3d at 385; *see Shaw*, 221 F.3d at 135 (reversing ALJ decision for refusal to follow treating physician rule, and holding remand for further proceedings unnecessary because record provided "overwhelming proof" that claimant suffered from listed impairment). Where, however, "the administrative record contains gaps," or where "further findings would . . . plainly help to assure the proper disposition of [the] claim," remand for a rehearing is appropriate. *Butts*, 388 F.3d at 385; *see Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999) (holding remand for calculation of benefits inappropriate because record failed to provide "persuasive evidence of total disability that rendered any further proceedings pointless").

As discussed above, once the opinions of Dr. Froehlich are given controlling weight, as directed by the District Court in its May 2017 remand Order, the evidence of disability in this case is overwhelming. Given the unusual circumstances of this case—including a nearly ten-year history and an ALJ decision flouting a court order containing clear instructions to afford controlling weight to a treating physician's opinions—and finding that substantial evidence supports a finding of disability, there is no just reason to further delay this matter for more

administrative proceedings. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 711, 730 (6th Cir. 2014) (remanding for calculation of benefits after two remands, three administrative hearings, and claim pending for nearly ten years); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) ("The [Commissioner] is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion." (internal quotation marks omitted)); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) ("Because of the medical record, we think it unconscionable to remand this eight[-]year[-]old case to the [Commissioner] for further review.").  Other courts in this Circuit have similarly held in cases where an ALJ failed to comply with a district court's remand order instructing the ALJ to follow the treating physician rule.  *See Dommes v. Colvin*, 225 F. Supp. 3d 113, 124 (N.D.N.Y. 2016) (remanding solely for calculation of benefits, where ALJ failed to comply with court order and Appeals Council order directing him to follow treating physician rule); *Mortise v. Astrue*, 713 F. Supp. 2d 111, 120–24 (N.D.N.Y. 2010) (remanding solely for calculation of benefits based on ALJ's failure to comply with Appeals Council order instructing him to follow treating physician rule); *see also Masters*, 2019 WL 1529198, at *6 (remanding solely for calculation of benefits, considering "overwhelming" evidence of disability and "three unsound ALJ decisions, all of which included reversable error in the analysis of the same treating

physician"); *Carrillo*, 599 F. Supp. at 1171 ("see[ing] no reason to prolong the often

painfully slow process by which disability determinations are made," court

remanded solely for calculation of benefits, after ALJ disregarded district court's

directions and reopened entire proceeding).  Both justice and expediency mandate

that the matter be remanded for a calculation of benefits.

**III.     Once the claim is remanded and Plaintiff is adjudicated disabled, the Commissioner must apply the rules for trial work and reentitlement periods.**

This case is complicated by the fact Plaintiff has returned to work.  In fact,

Plaintiff concedes that he "has continued to earn above [SGA] since 2013."  (Doc. 8-1

at 1; *see* AR 1022 ("The record . . . show[s] that [Plaintiff] began engaging in [SGA]

in June 2013 and that this work activity continue[d] through the date of this

decision.").)  This issue has not been adequately addressed by either the ALJ in his

decision or the Commissioner in her motion, in part because, as discussed above,

the ALJ disregarded the Court's direction to give controlling weight to

Dr. Froehlich's opinions and thus improperly determined that Plaintiff was not

disabled at any time since his alleged disability onset date.  Moreover, the ALJ

appears to have erroneously found that a "trial work period" could not apply

here because Plaintiff had not been adjudicated disabled when he began working.

Specifically, at the June 2018 administrative hearing, the ALJ asked Plaintiff's

counsel if he was seeking a "closed period" of disability, given that Plaintiff "has

been earning over SGA now for quite a few years."  (AR 1047.)  Counsel responded

that Plaintiff was working 25 hours a day, which was consistent with

Dr. Froehlich's opinions, and that the ALJ should analyze this work situation "under [the] return to work rules for trial work[] and extended period of eligibility." (*Id.*) The ALJ responded that Plaintiff "*has to be on benefits before he qualifies for a trial work period*, and . . . I can't grant any benefits where he's earning over SGA." (*Id.* (emphasis added).) The Court agrees with Plaintiff that the ALJ applied an incorrect legal standard.

"A claimant may return to work on a trial basis after []he has applied for benefits provided that five months have elapsed since the onset of the injury (which is when the claimant becomes entitled to receive benefits)." *Hassan v. Apfel*, No. 99 CIV. 10572BSJ JCF, 2000 WL 1751620, at *3–4 (S.D.N.Y. Nov. 21, 2000) (citing 42 U.S.C. § 422(c)(3); 20 C.F.R. § 404.1592(e)). During the trial work period, the claimant may test his ability to work and still be considered disabled. 20 C.F.R. § 404.1592(a). Under the Social Security Act, "any services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period." 42 U.S.C. § 422(c)(2). Stated differently, evidence of a claimant's work during a trial work period "cannot be used at all in determining whether a claimant is entitled to disability benefits." *Rosario v. Sullivan*, 875 F. Supp. 142, 147 (E.D.N.Y. 1995) (citing 42 U.S.C. § 422(c)(2); *Goldstein v. Harris*, 517 F. Supp. 1314, 1316 (S.D.N.Y. 1981); *Rivera v. Sec'y of Health, Educ. and Welfare*, 513 F. Supp. 194, 202 (S.D.N.Y. 1981); *McMillen v. Califano*, 443 F. Supp. 1362, 1368 (N.D.N.Y.

1978)).  The trial work period may last "as many as 9 months," and the months of work do not have to run consecutively.  20 C.F.R. § 404.1592(a).

After the trial work period ends, the claimant "may continue to test [his] ability to work," 20 C.F.R. § 404.1592a(a), for an additional period of 36 months, *id.* at § 404.1592a(b)(2)(ii), called the "reentitlement period."  If the claimant works during the reentitlement period, the Social Security Administration may decide that his disability has ceased because his work is SGA, and the benefits may be stopped. *Id.* at § 404.1592a(a).  But the benefits "may be resumed without a new application and a new determination of disability if the claimant stops engaging in SGA in a month during the reentitlement period."  *Reed v. Astrue*, No. 03-CV-6235T, 2008 WL 1902431, at *15 (W.D.N.Y. Apr. 28, 2008); *see* 20 C.F.R. § 404.1592a(a).

The trial work period begins with "the month in which [the claimant] *becomes entitled to* disability insurance benefits."  42 U.S.C. § 422(c)(3) (emphasis added). Therefore, contrary to the ALJ's apparent belief in this case, the claimant "need not be *receiving* disability benefits to be entitled to a trial work period, but need merely have filed an application to receive benefits."  *Rosario*, 875 F. Supp. at 147 (citing *McMillen*, 443 F. Supp. at 1368) (emphasis added); *see Mulderig v. Sullivan*, No. 91 CIV. 6066 (LLS), 1993 WL 22152, at *2 (S.D.N.Y. Jan. 28, 1993) ("A claimant's eligibility for a trial work period turns on whether he is *entitled to* benefits and not on whether he is actually receiving them." (emphasis added)); *Walker v. Sec'y of Health & Human Servs.*, 943 F.2d 1257, 1260 (10th Cir. 1991) ("the language of the [Social Security] Act does not suggest that an individual has to be adjudged disabled

and actually receiving benefits to be entitled to a trial work period"); *Campbell v. Califano*, 483 F. Supp. 1306, 1307 (E.D. Pa. 1980) (determination of nondisability reversed where it "was based solely on plaintiff's return to work during what qualified as a trial work period"). Under the ALJ's reasoning here, a claimant could never safely engage in trial work while his disability application was pending, even after (as here) there had been a continuous 12-month period during which the plaintiff did not engage in SGA, because the Commissioner could subsequently view that work as demonstrating that the claimant had never been disabled. "This result would contravene the general rule that the Social Security Act be considered a 'remedial statute to be broadly construed and liberally applied.'" *Goldstein*, 517 F. Supp. at 1316 (quoting *Gold v. Sec'y of Health, Education & Welfare*, 463 F.2d 38, 41 (2d Cir. 1972)). Moreover, this approach "would undermine the purpose of . . . the [Social Security] Act . . . to encourage return to work by eliminating the threat that the return will terminate benefits." *Id.* (citing 42 U.S.C. § 422(c)(1)) (internal quotation marks omitted). Further, limiting the trial work period to only those already receiving benefits would be inequitable. One court explained: "A claimant whose claim was filed in an overloaded [Social Security Administration] office or was handled by an incompetent employee would be unable to engage in trial work for years, while another would be able to do so within five months of the onset of disability." *Tepfer v. Sec'y of Health & Human Servs.*, 712 F. Supp. 156, 159 (W.D. Ark. 1989). The Eighth Circuit agreed, stating:

> [C]onditioning trial work periods upon prior receipt of benefits would subject claimants to the vagaries of the administrative office in which

the claim was filed[:] [a]n individual whose claim is efficiently processed might be able to begin trial work after expiration of the five-month waiting period and award of benefits, in contrast to another claimant who filed in a busier or less efficient office. Claimants could be discouraged from working prior to an adjudication, and . . . they would be forced to remain idle for at least one year. This situation would be inconsistent with the trial work period policy to encourage people to return to work as soon as possible.

*Newton v. Chater*, 92 F.3d 688, 694 (8th Cir. 1996) (citations omitted).

Therefore, the ALJ erred in his consideration of Plaintiff's return to work. On remand, after adjudicating Plaintiff disabled, the Commissioner shall apply the rules for trial work and reentitlement periods, as discussed above.

## Conclusion

The ALJ should have followed the explicit language of the Court's Order to give Dr. Froehlich's opinions "controlling weight." (AR 1132, 1136.) By failing to do so, ALJ Menard's post-remand decision disregarded the directives of this Court, thereby "disrupt[ing] the very nature of the hierarchical system of Social Security Appeals," *Myers v. Colvin*, Civil Action No. 4:14cv32, 2015 WL 3830972, at *19 (E.D. Va. June 18, 2015), and further prolonging adjudication of Plaintiff's claim. Had the ALJ given controlling weight to Dr. Froehlich's opinions, Plaintiff would have been found disabled for the period beginning on his alleged disability onset date of June 13, 2009. Plaintiff initially filed this claim a few months after that, in August 2009—approximately ten years ago. Since then, there have been three administrative hearings, three ALJ decisions written by two different ALJs, one substantive order from the Appeals Council, two complaints filed with two different

judges of this Court, one 31-page Order written by Judge Sessions, and now the instant Order written by the undersigned Magistrate Judge.

For the reasons explained herein, the Court GRANTS Plaintiff's motion (Doc. 8), DENIES the Commissioner's motion (Doc. 9), and ORDERS that Plaintiff's claim be REMANDED for a calculation of benefits. Before benefits may be calculated, given Plaintiff's return to work, the Commissioner must apply the rules for trial work and reentitlement periods, as discussed herein. *In light of the time elapsed since Plaintiff's initial filing for benefits—approximately ten years, in part due to the ALJ's failure to comply with the clear directives contained in the Court's initial remand Order—this claim should receive expedited consideration on remand.*

Dated at Burlington, in the District of Vermont, this 23rd day of July 2019.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge